**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| SHAHEEDRA JORDAN, ET AL. | |
| | CIVIL ACTION |
| VERSUS | |
| | NO. 21-48-JWD-SDJ |
| SID J. GAUTREAUX III, ET AL. | |

**RULING AND ORDER ON THE PARISH'S
SECOND MOTION TO DISMISS**

This matter comes before the Court on the *Motion to Dismiss* (Doc. 61) filed by the City of Baton Rouge/Parish of East Baton Rouge ("the Parish). Plaintiffs, Shaheedra Jordan, Sahara Claiborne, and Leiaja Claiborne ("Plaintiffs") oppose the motion, (Doc. 66), and the Parish has filed a reply, (Doc. 68). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the Parish's motion is denied.

**I.      Relevant Factual and Procedural Background**

This case involves the tragic suicide of Shaheed Claiborne, a mentally ill pretrial detainee at East Baton Rouge Parish Prison ("EBRPP"). Claiborne's heirs bring this suit against (1) (a) Sheriff Sid J. Gautreaux, III, in his capacity as Sheriff of East Baton Rouge Parish ("Sheriff Gautreaux"); (b) Lieutenant Colonel Dennis Grimes, Warden of the East Baton Rouge Parish Prison ("Warden Grimes"); and (c) certain individuals associated with the East Baton Rouge Parish Sheriff's Office ("EBRSO")[1] (collectively, "Sheriff Defendants");  (2) (a) CorrectHealth East Baton Rouge, LLC ("CorrectHealth"), (b) two of its upper level officers,[2] and (c) a handful of its

---

[1] The individuals associated with the EBRPSO named as defendants include: Corporal Jacob Page, Deputy Kenyaki Domino, Corporal Damien King, Corporal Michael Britt, Corporal Justin Minor, Deputy Rodney Johnson, Deputy Joe Coleman, Sergeant Jermaine Cruz, Lieutenant Grant, and Captain Leader

[2] These upper level officials include Carlo Musso, MD, CorrectHealth's President and Managing Member, and Jean Llovet, its director of clinical services.

1

healthcare providers allegedly involved in Claiborne's death[3] (collectively, "CorrectHealth Defendants"); and (3) the Parish.

All three Defendants initially moved to dismiss this case, (Docs. 13, 15, 25), and the Court issued two extensive rulings addressing those motions: *Jordan v. Gautreaux* (*Jordan I*), 593 F. Supp. 3d 330 (M.D. La. 2022), Doc. 45, and *Jordan v. Gautreaux* (*Jordan II*), No. 21-48, 2022 WL 897549 (M.D. La. Mar. 25, 2022), Doc. 46. *Jordan I* dealt with Sheriff Defendants' and the Parish's motions to dismiss, and *Jordan II* dealt with CorrectHealth Defendants' motion.

In *Jordan I*, the Court granted Sheriff Defendants' motion as to the federal claims and denied the Parish's motion to dismiss. Relevant here, the Court explained:

> Plaintiffs plead two counts against the Parish: Count 1 (conditions of confinement) and Count 4 (*Monell*). As stated above, the standards for a *Monell* claim and for a conditions of confinement claim are similar and frequently overlap. *See* [*Duvall v. Dall. Cty, Tex.,* 631 F.3d 203, 208 (5th Cir. 2011).]
>
> Again, "to prevail on a conditions-of-confinement claim, a plaintiff must show a condition—a rule, a restriction, an identifiable intended condition or practice, or sufficiently extended or pervasive acts or omissions of jail officials—that is not reasonably related to a legitimate government objective and that caused the constitutional violation." [*Sanchez v. Young Cnty., Tex. (Sanchez II)*, 956 F.3d 785, 791 (5th Cir.), *cert. denied,* 141 S. Ct. 901 (2020)] (cleaned up). For this claim, a plaintiff need not show deliberate indifference on the part of the municipality. *See Duvall*, 631 F.3d at 207.
>
> Further, again, the Fifth Circuit "has repeatedly held that municipalities or supervisors may face liability under section 1983 where they breach duties imposed by state or local law." *O'Quinn v. Manuel*, 773 F.2d 605, 608–09 (5th Cir. 1985) (citations omitted). "The critical point for this case is that such liability may result if municipal officials have actual or constructive knowledge of constitutional violations and fail to carry out their duty to correct them." *Id.* (citation omitted).

---

[3] The CorrectHealth providers named as defendants include Nurse Brumfield, Nurse Foy, Nurse Chapman, and John Doe #6.

"The general statutory scheme is that the parish is responsible for the expenses of establishing, maintaining and operating a jail and for all expenses of feeding, clothing, and providing medical treatment to prisoners." [*Boudreaux v. St. Mary Par. Council*, No. 07-614, 2009 WL 1787678, at *4 (W.D. La. June 18, 2009)] (citing *Amiss v. Dumas*, 411 So. 2d 1137 (La. App. 1 Cir. 1982)). "Where a municipal body is vested with this sort of fiscal obligation to a jail, its liability for insufficient funding or maintenance will depend on its knowledge of conditions at the jail." *O'Quinn*, 773 F.2d at 609. Further, "a parish can be liable for damages under federal law for failure to contract for and fund constitutionally adequate medical and mental health care." *Thompson v. Ackal*, No. 15-02288, 2016 WL 1371192, at *5 (W.D. La. Feb. 2, 2016), *report and recommendation adopted*, No. 15-02288, 2016 WL 1370597 (W.D. La. Apr. 5, 2016); *see also Roper v. Marino*, No. 92-3988, 1995 WL 222185, at *2 (E.D. La. Apr. 13, 1995) (denying summary judgment because there were "fact issues as to whether medical services and personnel were sufficient at the St. Charles Parish Jail."). [*See also* La. Rev. Stat. Ann. § 15:703(A) ("The governing authority of each parish shall appoint annually a physician who shall attend the prisoners who are confined in parish jails whenever they are sick."); *id*. § 15:703(B) ("In lieu of appointing a physician, the governing authority of any parish may enter into a contract with a health care provider, licensed or regulated by the laws of this state, to provide requisite health care services, as required in this Section.").]

Here, Plaintiffs have sufficiently alleged a viable conditions-of-confinement claim against the Parish. Plaintiffs sue the Parish as the "entity responsible for funding operations of the [EBRPP]" and as the party that "negotiates, approves, funds, and enters into contracts with other entities to provide medical and mental health services at the jail[.]" ([*First Am. Compl.* ("*FAC* ")] ¶ 1(a), Doc. 9.) Plaintiffs also make the following allegations related to the Parish:

> Defendant Parish failed to provide sufficient funding and oversight to all defendants, resulting in unconstitutional conditions of confinement at the EBRPP. The Parish's policy of not sufficiently funding and overseeing the EBRPP caused defects in physical design and manner of operation, including inadequate staffing, inadequate medical and mental health care, inadequate supervision techniques, and/or poor sightlines at the EBRPP, resulting in a continuous pattern of constitutional deprivations for all prisoners in EBRPP, including Mr. Claiborne.

3

> Despite overwhelming, publicly documented testimony by countless staff members and consultants, Parish continues to ignore the dangerous conditions of EBRPP, which directly resulted in the death of Mr. Claiborne.

(*Id.* ¶ 43.) Thus, contrary to the Parish's position, Plaintiffs provide highly specific allegations about the Parish's practices with respect to EBRPP and how they are defective.

Further, Plaintiffs allege that the Parish had adequate notice about the problems. The Court need not repeat all the allegations of systematic deficiencies contained in *FAC* ¶ 44, Doc. 9, but Plaintiffs specifically allege that, from 2012 to 2016, jail conditions "were squarely before the metropolitan council at least ten times," (*id.* ¶ 44(b)), along with details of one metro council meeting where Gautreaux and other EBRPP personnel spoke about the deplorable conditions of the prison, (*id.* ¶ 44(m)), and details of another meeting where (a) "Defendant Llovet either couldn't or declined to answer a majority of questions posed by the . . . Metro Council regarding deaths at EBRPP," (*id.* ¶ 44(x)), and (b) metro council members spoke critically of the prison, (*id.*). Further, Plaintiffs refer to public statements by Grimes, Gautreaux, and other public figures about the conditions of the jail. (*Id.* ¶ 44(i), (n), (o).) Plaintiffs also cite to the report of the Parish's consultant, HMA, and its evaluation of the healthcare at EBRPP, (*id.* ¶ 44(p)), and they plead the inadequacy of the Parish's response to the HMA report in hiring CorrectHealth and in making an insufficient increase in the budget that was less than the HMA recommendation, (*id.* ¶ 44(q)). All of these allegations, particularly when combined with the numerous other incidents involving prisoners with mental health issues, (*id.* ¶¶ 44(e), (f), (l), (u)), and those who committed suicide there, (*id.* ¶¶ 44(c), (s)), demonstrate that the Parish had ample notice of deficiencies at the jail.

The Parish responds that Plaintiffs must establish a sufficient number of prior similar incidents to impose liability, but that is an incomplete characterization of the law for conditions-of-confinement claims. The Fifth Circuit has said that "specific examples of other instances of detainees who suffered [decedent's] fate . . . are not required to meet the 'condition or practice' element." *Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 876 (5th Cir. 2016). For instance, in *Sanchez II*, the Fifth Circuit found that the district court erred in finding that there was insufficient evidence of an "unofficial custom or practice—much less *pervasive* acts—of failing to monitor detainees." 956 F.3d at 792.

4

The Fifth Circuit based this conclusion on a number of facts. First, contrary to the lower court's ruling, there were reports from the Texas Commission on Jail Standards "about inadequate detainee monitoring from before and after [decedent's] death[,]" which served as "evidence that jailers failed to monitor other detainees." *Id.*

Second, there was evidence of ratification, as, after the death, the "sheriff neither punished any jailers involved nor took any actions to correct the jail's alleged deficiencies." *Id.* at 792–93. The Fifth Circuit said:

> When the official policymaker knows about misconduct yet allegedly fails to take remedial action, this inaction arguably shows acquiescence to the misconduct such that a jury could conclude that it represents official policy. *See Duvall*, 631 F.3d at 208–09 (upholding jury finding that a county jail maintained an unconstitutional condition where there was evidence that the county policymaker knew of unconstitutional conditions yet failed to revise its policies); *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) (holding that, because the city policymaker failed to change policies or to discipline or reprimand officials, the jury was entitled to conclude that the complained-of practices were "accepted as the way things are done and have been done in" that city)[.]

*Id.* at 793 (citation omitted).

Third, there was certain evidence of discrepancies between cell-check logs and video recordings of the decedent's cell, with six hours of recordings missing without explanation. *Id.* The appellate court explained, "[a] jury might then reasonably conclude that, in light of multiple reports that the jail inadequately monitored detainees, such dishonesty and an apparent cover-up is 'typical of extended or pervasive misconduct.' " *Id.* (quoting [*Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (en banc)]; also citing *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 895 (5th Cir. 1980) (holding that inconsistent testimony "present[s] questions of credibility which require jury resolution")).

With respect to the failure-to-assess claims, the Fifth Circuit said, "[o]ne way a plaintiff can prove the existence of a de facto policy is

5

> through the 'consistent testimony of jail employees.' " *Id.* at 794 (quoting *Montano*, 842 F.3d at 875). The *Sanchez II* court then cited the testimony of "[a]t least three jailers" and held that, "consistent jailer testimony about a de facto policy creates a factual dispute that precludes summary judgment." *Id.*
>
> Here, as stated above, Plaintiffs allege some of these factors with respect to the Parish. As in *Sanchez II*, there was a public report about the unconstitutional conditions (from HMA), (*FAC* ¶ 44(p), Doc. 9), and a reasonable juror could find ratification of these conditions from the Parish's failure to correct the extensive problems despite the numerous specific deaths and public meetings. Further, as in *Sanchez II*, there was consistent testimony from Gautreaux, Grimes, public figures, and EBRPP personnel about the deplorable conditions at the prison. (*Id.* ¶¶ 44(b), (m), (x), (i), (n), (o).)
>
> In sum, contrary to the Parish's position, Plaintiffs' *FAC* (1) articulates specific policies and conditions which serve no legitimate governmental function, and (2) supports the existence of these pervasive conditions through extensive allegations. Accordingly, the Parish's motion to dismiss will be denied.

*Jordan I*, 593 F. Supp. 3d at 370–73. But, again, the Court found the federal claims against Sheriff Defendants' inadequate and so dismissed them. *Id.* at 373–74. In *Jordan II*, the Court also dismissed all claims by Plaintiffs against CorrectHealth and the upper-level CorrectHealth defendants except a conditions of confinement claim. *Jordan II*, 2022 WL 897549, at *24. In both rulings, the Court gave Plaintiffs leave to amend to cure the deficiencies. *Id.*; *Jordan I*, 593 F. Supp. 3d at 374.

To that end, Plaintiffs filed the *Second Amended Complaint* ("*SAC*") (Doc. 48). Critically, none of the key allegations about the Parish detailed above have materially changed in the *SAC*. (*See SAC* ¶¶ 43–54, Doc. 48.) In fact, Plaintiffs add allegations about Claiborne's allegedly botched medical assessment by nurses, (*id.* ¶¶ 57–61), who failed to detect his suicidal tendencies despite noting his bipolar disorder, agitation, and need for medications and from which errors

6

inferences can be further drawn about the inadequacies of the health system at the prison (and the City's funding and contracting thereof). Plaintiffs also allege:

> EBRPP had inadequate facilities, mental health services, staff training and other severe deficits that prevented reasonable treatment of mentally ill inmates. This is not just my conclusion as a result of reviewing the record in this case. It is also the conclusion of the EBRPP jail administrators, the East Baton Rouge Sheriff and East Baton Rouge Parish officials. Further, that conclusion was corroborated by a detailed and comprehensive independent study specifically commissioned by the Parish to evaluate EBRPP. . . .
>
> Rather than take steps to implement HMA's recommendations, East Baton Rouge Parish and EBRPP did nothing more substantial than to privatize the provision of health care services (by contracting with CorrectHealth) and marginally increase the budget in response to these warnings and continued to incarcerate mentally ill inmates, including the severely mentally ill, at EBRPP, essentially under the same conditions. Those same conditions still existed at the time of Mr. Claiborne's incarceration in January of 2020 . . . .
>
> In fact, at least 17 inmates have died in EBRPP since CorrectHealth took over in January of 2017, and in 2018 researchers at the Promise of Justice Initiative reported the jail's death rate was more than twice the national average. That rate hasn't decreased since CorrectHealth took over . . . .
>
> One would have expected and predicted that EBRPP's use of CorrectHealth should have decreased the extraordinary mortality rates at EBRPP, but instead the mortality rate, in the years after CorrectHealth assumed responsibility, reflected a 36% increase when compared to the already extremely high death rate for previous the five years at EBRPP. The 17 deaths in the 2.5 years after CorrectHealth took over at EBRPP was more than three times the national average (140 per 100,000) for deaths in jails.

(*Id.* ¶¶ 76–79.)

All Defendants then again moved to dismiss. (Docs. 55, 56, 61.) However, the instant ruling addresses only the Parish's second motion. (Doc. 61.)

## II.     Rule 12(b)(6) Standard

"Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]; *Twombly*, 55[0] U.S. at 556 [ ]. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation"

8

> that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556 [ ].

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014) (citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). The Court "need not, however, accept the plaintiff's legal conclusions as true." *Id.* at 502–03 (citing *Iqbal*, 556 U.S. at 678). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Id.* at 503 (cleaned up).

Further, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). However, "[a]lthough 'a court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)).

### III. Discussion

The Parish's position can be boiled down to the following three points. First, the Parish is responsible only for certain aspects of EBRPP, and it provided what was required. (Doc. 61-1 at

9

5–12.) Second, the Parish is only liable for known suicidal tendencies, and, here, Claiborne's were not known. (Doc. 68 at 1–3.) And third, the Court should take judicial notice of certain court documents from other cases involving the Parish and EBRPP and/or convert the motion to one for summary judgment; doing so will establish that the Parish is not culpable for Claiborne's death (*Id.* at 3–4.)

Conversely, Plaintiffs' argument can be distilled to the following:

> In light of the court's findings and ruling in [*Colbert v. City of Baton Rouge/Par. Of E. Baton Rouge*, No. 17-28, 2018 WL 344966 (M.D. La. Jan. 8, 2018) (Jackson, C.J.) and *Zavala v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 17-656, 2018 WL 4517461, at *17 (M.D. La. Sept. 20, 2018) (deGravelles, J.)], the Plaintiffs' allegations in their Second Amended Complaint are more than sufficient to state a conditions of confinement claim (Count 1) and *Monell* claim (Count 4) against the City/Parish, and nothing has changed in that respect since this Court's previous ruling that denied the City/Parish's motion to dismiss the Plaintiffs' First Amended Complaint.

(Doc. 66 at 7.)

In short, the Court agrees with Plaintiffs. As to the Parish's first and second arguments, *Jordan I* describes at length the reasons why the *FAC* adequately pleads claims against the Parish, and the changes done to the *SAC* only enhance the viability of those claims. Nothing in the Parish's original memorandum or reply convinces the Court that it erred in its earlier assessment. *See Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 328 (5th Cir. 2017) ("a motion for reconsideration 'is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.' " (cleaned up)); *Adams v. United Ass'n of Journeyman & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Can., AFL-CIO, Loc. 198*, No. 98-400, 2022 WL 193022, at *3 (M.D. La. Jan. 20, 2022) (deGravelles, J.) ("Ultimately, a motion for reconsideration is an extraordinary remedy and should be used sparingly

10

in the interest of finality and conservation of judicial resources." (citing *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)).

As to the third argument, the Parish has failed to demonstrate why the Court should consider only a few selectively-chosen documents of the large number of potentially relevant ones which discovery could yield. *See Zavala v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 17-656 (M.D. La. Mar. 3, 2022), Doc. 348 (denying document-intensive motion for summary judgment by Parish on EBRPP-related conditions of confinement claim based on numerous questions of fact). The Parish has failed to show that the Court would abuse its discretion if it declined to consider these documents. *See Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020 (per curiam) (finding no abuse of discretion "in excluding . . . exhibits, even though some were referenced in [plaintiff's] pleading.") (citing *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference)).

Finally, the Parish asks the Court to decline supplemental jurisdiction over Plaintiffs' state law claims. (Doc. 61-1 at 20.) But, since the Court will deny the Parish's motion to dismiss Plaintiffs' federal claims, the Court will also deny the motion on this issue as well.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 61) filed by the City of Baton Rouge/Parish of East Baton Rouge is **DENIED.**

Signed in Baton Rouge, Louisiana, on February 2, 2023.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**